IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHET MICHAEL WILSON, | |
| Plaintiff, | |
| v. | No. 1:25-cv-10578 |
| DISABILITY SERVICES OF AMERICA, LLC, | Judge Manish S. Shah |
| Defendant. | |

**DEFENDANT DISABILITY SERVICES OF AMERICA, LLC'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), Defendant Disability Services of America, LLC ("DSA") moves to dismiss the putative class action complaint ("Complaint") filed by Plaintiff Chet Michael Wilson ("Plaintiff"). In support of this Motion to Dismiss ("Motion"), DSA states as follows:

**INTRODUCTION**

Plaintiff purports to allege a putative class action Complaint under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). However, the Complaint is a textbook example of the abusive litigation tactics that the TCPA was never intended to reward. Plaintiff seeks statutory damages for two brief calls placed by a government contractor performing federally mandated work: helping Americans with disabilities find employment. By filing his Complaint against a public-service provider, Plaintiff ignores both the well-established limits of the TCPA and DSA's own pre-suit warning. The Complaint is legally baseless and warrants dismissal with prejudice, for three simple reasons.

First, DSA is a federal contractor. As such, DSA's federal contractor immunity is a jurisdictional bar to suit under the *Yearsley* doctrine, and Rule 12(b)(1) requires the dismissal of Plaintiff's Complaint.

1

Second, and similar to the first reason, the Federal Communications Commission ("FCC") ruled that the TCPA generally does not apply to federal contractors (such as DSA) who make telephone calls pursuant to a contract with the Social Security Administration ("SSA"). Thus, Plaintiff fails to assert a TCPA claim under Rule 12(b)(6).

Third, as Plaintiff already concedes via the voicemails transcribed in the Complaint, DSA did not attempt sell any goods or services to its customers. For this additional reason, Rule 12(b)(6) requires dismissal of the Complaint because, on its face, Plaintiff cannot allege that DSA engaged in a "telephone solicitation" as defined by the TCPA.

For these three straightforward reasons, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

On the federal SSA website, DSA is specifically listed as an "Employment Network" ("EN") contractor for the SSA's Ticket to Work ("TTW") program. *See Find Help*, Social Security Administration, https://choosework.ssa.gov/findhelp/ (identifying DSA as an EN after searching for "Disability Services of America" on the website, a screenshot of which is attached hereto as Exhibit A).[1] Federal SSA regulations define an EN as "a qualified public or private entity that has entered into an agreement with [the SSA] to serve under the [TTW] program and that assumes

---

[1] "Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). *See also Papasan v. Allain*, 478 U.S. 265, 268 n.1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) ("[W]e are not precluded in our review of the complaint from taking notice of items in the public record"); *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (holding that "[i]t's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss"); *Dixon v. The CMS*, No. 14 C 4986, 2015 WL 6701771, at n. 3 (N.D. Ill. Nov. 3, 2015) (recognizing that "a document that describes the Successful Disability Opportunities Program . . . and can be found on the website of the Illinois Department of Revenue, does appear to be a record made by CMS and thus a public record"); *Missouri Pet Breeders Ass'n v. Cnty. of Cook*, 106 F. Supp. 3d 908, 918 (N.D. Ill. 2015) ("The Court may take judicial notice of information published on federal agencies' websites, provided the accuracy of the content can readily be determined and cannot reasonably be questioned").

responsibility for the coordination and delivery of employment services, vocational rehabilitation services, or other support services to beneficiaries assigning tickets to it." 20 C.F.R. § 411.300. In other words, DSA is a federal contractor that helps people with disabilities secure access to various services offered by the SSA. *Id.* As an EN, DSA does not collect any fee from its customers, because the SSA pays DSA directly for its services in helping people determine their eligibility for SSA disability benefits. 42 U.S.C. § 1320b-19(b)(4) ("An [EN] may not request or receive compensation for such services from the beneficiary."). *See also* 20 C.F.R. § 411.570 ("Section 1148(b)(4) of the [Social Security Act] prohibits an EN from requesting or receiving compensation from the beneficiary for the services of the EN").

Notwithstanding the above, the Complaint attempts to assert a TCPA claim against DSA. (Compl. ¶ 1.) Specifically, Plaintiff alleges that he has been the subscriber and user of the telephone number (541) XXX-9999 for at least five years.[2] (Compl. ¶ 9.) Plaintiff also alleges that DSA placed a total of two (2) calls to his telephone number. (*Id.* ¶ 18.) According to the Complaint, DSA first called Plaintiff on June 30, 2025, and left the following voicemail:

> Hello. This message is for Kathy. This is Sarah giving you a call from Disability Services of America to follow up on your interest for applying for disability benefits with us. Give me a call back and we can speak further about it. You can reach me at 708-377-9941. Thank you.

(*Id.* ¶ 20.) Plaintiff also alleges that DSA called him the next day, on July 1, 2025, and left the following voicemail:

> Hello. This message is for Kathy. My name is Sarah. I am reaching out from Disability Representatives of America to follow up on your interest in applying for disability benefits with us. Give me a call back and we can speak further about it. You can reach me at 708-377-9941. Thank you.

---

[2] Though it is not dispositive as to this Motion, it is noteworthy that a public records search reveals that Plaintiff is the named plaintiff in more than forty-five (45) separate matters involving the TCPA and/or supposedly unsolicited calls. *See* Exhibit B.

3

(*Id.* ¶ 21.)

Plaintiff does not allege any further communications from DSA but claims that he did not give DSA prior express consent to make these two calls. (*Id.* ¶ 25.) Based on these allegations, Plaintiff filed this putative class action under the TCPA. (*Id.* ¶¶ 62–63.)

## ARGUMENT

### I.  Legal Standard

As to DSA's argument that *Yearsley* immunity applies, DSA moves to dismiss pursuant to Rule 12(b)(1) and asserts that the Court does not have subject matter jurisdiction over Plaintiff's claim. If the Court lacks the authority to hear and decide a dispute, then Plaintiff's claim must be dismissed as a matter of law. Fed. R. Civ. P. 12(b)(1). "In considering a motion to dismiss for lack of subject matter jurisdiction, the district court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

As to DSA's remaining arguments, DSA moves to dismiss pursuant to Rule 12(b)(6) and asserts that Plaintiff cannot state a claim against DSA because: (i) the FCC expressly exempts federal contractors like DSA from TCPA liability; and (ii) Plaintiff cannot allege that DSA engaged in "telephone solicitation" as defined by the TCPA, as SSA pays DSA directly for its services, and DSA does not collect any fee from its SSA beneficiary customers. "A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Dismissal is proper if 'it appears beyond doubt that the plaintiff

cannot prove any facts that would support his claim for relief.'" *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (*quoting Kennedy v. Nat'l Juv. Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999)).

**II.     As an authorized federal contractor, DSA is entitled to derivative sovereign immunity for its SSA-related services.**

"[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583, 63 S.Ct. 425, 87 L.Ed. 471 (1943). This "derivative sovereign immunity" stems from the United States Supreme Court's decision in *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940). *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018) ("Under the concept of derivative sovereign immunity, stemming from the Supreme Court's decision in *Yearsley* . . . agents of the sovereign are also sometimes protected from liability for carrying out the sovereign's will"). *Yearsley* immunity is a jurisdictional bar, and not a merits-based defense. *Id.* at 650. As a result, the proper basis for the dismissal of a suit against an entity with immunity is Rule 12(b)(1) and the lack of subject-matter jurisdiction.[3] *Id.* at 651.

The *Yearsley* doctrine states that "[a] federal contractor who simply performs as directed by the Government may be shielded from liability for injuries caused by its conduct." *Yearsley*, 309 U.S. at 20. The two requirements are that "(1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its

---

[3] Sovereign immunity may also provide a basis for dismissal under Rule 12(b)(2), as sovereign immunity also implies that a district court lacks personal jurisdiction over the federal government and its contractors. *Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1050 (7th Cir. 2025) ("Perhaps sovereign immunity is a doctrine of personal jurisdiction"); *see also Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 282, 143 S.Ct. 940, 215 L.Ed.2d 242 (2023) (Gorsuch, J., concurring in part) ("[Q]uestions of sovereign immunity usually go to a court's personal jurisdiction over a particular defendant"); *Franchise Tax Bd. of California v. Hyatt*, 587 U.S. 230, 238–39, 139 S.Ct. 1485, 203 L.Ed.2d 768 (2019) (explaining that sovereign immunity derives from the "common-law rule . . . that 'no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him'"). Accordingly, DSA moves in the alternative for dismissal of the Complaint pursuant to Rule 12(b)(2).

5

VP/#73381261

constitutional power." *Cunningham*, 888 F.3d at 646; *see Taylor Energy Co., L.L.C. v. Luttrell*, 3 F.4th 172, 175 (5th Cir. 2021) ("[*Yearsley*] immunity shields contractors whose work was 'authorized and directed by the government of the United States' and 'performed pursuant to an Act of Congress'"). The derivative sovereign immunity defense applies to the TCPA. *See Cunningham*, 888 F.3d at 651 (affirming dismissal of a TCPA claim based on *Yearsley* immunity); *see also In re Rules & Reguls. Implementing the TCPA*, 35 FCC Rcd. 15052, 15057 ¶ 15 (Dec. 14, 2020) ("[Federal] contractors may also qualify for forms of derivative immunity when making calls on behalf of the federal government."); *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 166 (2016), as revised (Feb. 9, 2016) (denying derivative sovereign immunity in a TCPA case only on the basis that the contractor violated the government's instructions).

As to the first element for *Yearsley* immunity, DSA is authorized by the federal government, as an SSA-designated EN, to place calls to potential benefits recipients when they request information about DSA's services. First, ENs such as DSA have regulatory duties to their customers (i.e., the SSA beneficiaries). *See* 20 C.F.R. § 411.320 (requiring ENs to serve a prescribed service area and ensure that they provide appropriate services under the TTW program). Additionally, the SSA approves a Blanket Purchase Agreement (now known as a Ticket Program Agreement[4]) with each EN, which "specifically requires ENs to contact beneficiaries and discuss the work incentives and other questions they may have about returning to work." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Broadnet Teleservices LLC Nat'l Emp. Network Ass'n Rti Int'l*, 31 F.C.C. Rcd. 7394 (2016) (clarifying that "the TCPA does not apply to calls made by or on behalf of the federal government in the conduct of official

---

[4] *See also* https://yourtickettowork.ssa.gov/employment-networks/becoming-an-en/rfa-and-tpa ("If your organization is qualified to become an EN and your application is approved, Social Security will award you a Ticket Program Agreement (TPA).")

government business, except when a call made by a contractor does not comply with the government's instructions"). Moreover, DSA is required by law and its federal contract to develop individual work plans "in partnership with each beneficiary receiving services in a manner that affords the beneficiary the opportunity to exercise informed choice in selecting an employment goal and specific services needed to achieve that employment goal." 20 C.F.R. § 411.320. Thus, DSA is authorized by the federal government to contact beneficiaries who request information about DSA's services, which is exactly consistent with Plaintiff's allegations in the Complaint. (Compl. ¶¶ 20–21 (alleging DSA left voicemails offering to provide information about disability services to someone who requested such information and provided Plaintiff's telephone number).)

As to the second element for *Yearsley* immunity, the SSA validly confirmed the authorization it provided to DSA. "Authorization is 'validly conferred' on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization." *Cunningham*, 888 F.3d at 646–47; *see Yearsley*, 309 U.S. at 20 ("[I]f this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will"). Here, Congress created the TTW program through the Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. No. 106-170, 113 Stat. 1860 (the "TTW Act"). The TTW Act mandated the SSA to contract with ENs to provide disability services to beneficiaries. 42 U.S.C.A. § 1320b-19 (West). Therefore, because Congress authorized the SSA to contract with ENs such as DSA, DSA's authority was "validly conferred" by the SSA. *Cunningham*, 888 F.3d at 646.

In sum, federal law and DSA's contract with the SSA allow DSA to essentially act as the authorized alter-ego of the federal government and provide services to disabled Americans.

Because the SSA itself would be immune from TCPA liability for placing informational calls related to disability services, then DSA must also be immune from such liability. *Campbell-Ewald*, 577 U.S. at 166 ("The United States and its agencies . . . are not subject to the TCPA's prohibitions because no statute lifts their immunity"); *In re Rules & Reguls. Implementing the Tel. Consumer Protection Act of 1991*, CG Docket No. 02-278, 31 F.C.C. Rcd. 7394, 7398 (2016) (A "person" liable under the TCPA does not include "the federal government or [its] agents acting within the scope of their agency under common-law principles of agency"). As a result, DSA is immune from Plaintiff's TCPA claim, and the Complaint must be dismissed with prejudice.

**III.   The FCC ruled that federal contractors such as DSA are exempt from the TCPA.**

Plaintiff attempts to assert a claim against DSA for calling his telephone number which he registered on the Do Not Call Registry ("DNC"). (Compl. ¶¶ 17, 59.) The TCPA prohibits "any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in [the DNC]." 47 U.S.C. § 227(c)(3)(F). However, the FCC ruled that a "person" under the TCPA must exclude "the federal government or [its] agents acting within the scope of their agency under common-law principles of agency." *In re Rules & Reguls. Implementing the Tel. Consumer Protection Act of 1991*, CG Docket No. 02-278, 31 F.C.C. Rcd. 7394, 7398 (2016) ("TCPA does not apply to calls made by or on behalf of the federal government in the conduct of official government business"). In other words, as applied here, the TCPA will not apply to calls made by government contractors such as DSA so long as such calls were made pursuant to a contract with the SSA.

In its rule promulgation, the FCC expressly found that:

> [I]f contractors working on behalf of the Social Security Administration were "persons" under the TCPA, they would find it more difficult and costly to inform disabled or injured Americans of incentives that allow them to attempt to return to work without risking benefits. We can discern no legal or policy rationale that would justify making it more difficult for the federal government to inform citizens

8

of ways to leave poverty behind or to otherwise contact citizens for similar benevolent purposes.

*Id.* at 7404.

To the extent Plaintiff argues that this Court should disregard the FCC's interpretation of the TCPA and its exemption of contractors such as DSA, the Seventh Circuit soundly rejected this argument. *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (finding that the Administrative Orders Review Act (also known as the Hobbs Act) "reserves to the courts of appeals the power 'to enjoin, set aside, suspend (in whole or in part), or to determine the validity of' all final FCC orders"). Therefore, because the FCC specifically exempted companies such as DSA from the TCPA, and because that exemption is unchallengeable at the federal district court level, Plaintiff cannot state a viable claim against DSA for violation of the TCPA.

**IV.    Plaintiff cannot assert a TCPA claim because DSA did not, and cannot, solicit or otherwise encourage the purchase of goods or services from its customers.**

In his Complaint, Plaintiff attempts to assert a TCPA claim under 47 C.F.R. § 64.1200(c), which prohibits any person or entity from initiating a "telephone solicitation" to telephone numbers on the DNC. (Compl. ¶ 59.) The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4). Calls do not fall within the definition of a "telephone solicitation" if their purpose could not have been to encourage consumers to pay for services, such as if those services are offered free of charge. *Hulce v. Zipongo Inc.*, 132 F.4th 493, 500 (7th Cir. 2025). Importantly, the Seventh Circuit held that the "important implication" is that "the person or entity the caller intends to encourage is also the party who makes the purchasing decision." *Id.*; *see also Trujillo v. Free Energy Sav. Co.*, No. 5:19-cv-02072-MCS-SP, 2020 WL 7768722, at *3 (C.D. Cal. Dec. 21, 2020) (finding no solicitation where the communication invited the recipient to seek free services).

9

As demonstrated by the transcripts of DSA's two voicemails to Plaintiff (Compl. ¶¶ 20–21), DSA did not encourage or otherwise solicit Plaintiff to "purchase" anything from DSA. In fact, DSA was simply following up on a request for information regarding potential disability benefits. In fact, these voicemails are consistent with the federal law that prohibits ENs such as DSA from requesting or receiving compensation from its SSA beneficiary customers. *See, e.g.,* 42 U.S.C. § 1320b-19(b)(4) and 20 C.F.R. § 411.570. Thus, DSA does not even have goods or services that *could* be purchased by Plaintiff. To the extent Plaintiff attempts to distinguish DSA as a for-profit organization, the Seventh Circuit already rejected that argument. *See Hulce*, 132 F.4th at 499 (refusing to conflate "commercial messages" and "profit-seeking" with "encouraging [] purchase" because Congress used these terms in distinct ways in separate TCPA provisions). Therefore, because DSA cannot be liable for any violation of the TCPA, the Complaint should be dismissed on the face of the pleadings.

## CONCLUSION

FOR THESE REASONS, Defendant Disability Services of America, LLC respectfully requests an Order: (i) granting this Motion; (ii) dismissing the Complaint with prejudice; and (iii) granting such other relief as the Court deems appropriate.

Respectfully submitted,

Disability Services of America, LLC

By:     s/ *Brian W. Ledebuhr*
        One of Its Attorneys

VP/#73381261

Brian W. Ledebuhr, Bar No. 6294417
Christopher R. Rodenbaugh, Bar No. 6350086
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
bledebuhr@vedderprice.com
crodenbaugh@vedderprice.com

Dated: October 27, 2025

### CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on all counsel of record via the court's electronic filing system on October 27, 2025.

/s/ *Brian W. Ledebuhr*

VP/#73381261