UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Chet Michael Wilson, on behalf of himself and all others similarly situated<br><br>*Plaintiff*,<br><br>v.<br><br>Disability Services of America, LLC<br><br>*Defendant*. | No. 1:25-cv-10578<br><br>Judge Manish Shah |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6).**

Chet Michael Wilson brings a single claim under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c), the TCPA's do-not-call rules. ECF 1. Disability Services of America moves to dismiss on two grounds. ECF 30. Disability Services first invokes the *Yearsley* government-contract defense, asserting that it is immune because it "simply did what the government asked it to do." In *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20–21 (1940), the Court held that a contractor avoids liability only if it acted under valid federal authority and followed the government's instructions. Disability Services next argues that its two voicemails are not "telephone solicitations" under the TCPA.

Neither argument can be resolved on the pleadings and ultimately they rise and fall together. If the voicemails were solicitations aimed at generating new business for Disability Services, then Disability Services was not acting under federal authority and cannot claim *Yearsley* immunity. Whether Disability Services acted under valid federal authority and complied with government directives is a fact-bound question that requires discovery. So is whether the voicemails encouraged the purchase of Disability Services' services within the meaning of the TCPA's do-not-call provisions. Because both arguments depend on facts outside the complaint, the motion should be denied.

1

## LEGAL STANDARD

The purpose of an motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to address the sufficiency of the complaint for a claim upon which relief can be granted. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted); *see also Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ("[T]rial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). Complaints that contain only "naked assertion[s] devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted).[1]

## ARGUMENT

1. **Disability Services is a "person" for TCPA purposes.**

The TCPA prohibits "any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in [the DNC]." 47 U.S.C. § 227(c)(3)(F). Under 47 U.S.C. § 153(39): "The term 'person' includes an individual, partnership, association, joint-

---

[1] Disability Services styles part of its motion as a challenge to subject-matter jurisdiction under Rule 12(b)(1). That framing is incorrect. The Seventh Circuit treats *Yearsley* as a merits defense, not a jurisdictional bar, and courts analyze it under Rule 56—not Rule 12(b)(1). See, e.g., *Tillett v. J.I. Case Co.*, 756 F.2d 591, 596–600 (7th Cir. 1985).

stock company, trust, or corporation." Disability Services is a corporation and is therefore a person under the TCPA.

## 2. The FCC's 2016 does not apply here..

Notwithstanding, the plain text of the statute, Disability Services points to a 2016 FFC ruling which held that "the term 'person' in section 227(b)(1) does not include a contractor when acting on behalf of the federal government, as long as the contractor is acting as the government's agent in accord with the federal common law of agency." *In re USCOC of Greater N.C., LLC & Horry Tel. Coop., Inc.*, 31 FCC Rcd 7394, 7402. Disability Services relies on this ruling to argue that because it is a federal contractor it cannot be a person for TCPA purposes. ECF 28 at 8. Disability Services is wrong. First, the 2016 ruling applies only to claims brought under section 227(b)(1) (automatic-dialer and prerecorded-message claims).[2] But here Wilson alleges a claim under Section 227(c)(5) (a DNC claim). Thus, the FFC's interpretation does not apply here. Even if it did, it no longer binds this Court. As the Supreme Court recently held:

> In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2015, 222 L. Ed. 2d 405 (2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)). Thus, this Court should interpret the statute as courts traditionally do under

---

[2] The FFC explicitly noted that " we emphasize that our interpretation of 'person' as excluding the federal government is limited to the specific statutory provision before us: section 227(b)(1) of the Communications Act. We make no finding here with respect to the meaning of 'person' as used elsewhere." 31 FCC Rcd 7394,7400.

ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

### 3. Because derivative sovereign immunity is an affirmative defense, Disability Services' motion is not properly brought under rule 12(b)(1).

Only three federal circuits have addressed whether *Yearsley* operates as an affirmative defense or a jurisdictional bar. The Fifth and Sixth Circuits have held that it is an affirmative defense that must be raised and proven by the defendant—not a limitation on the court's subject-matter jurisdiction. *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009) The Fourth Circuit stands alone in treating the doctrine as jurisdictional. *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 651 (4th Cir. 2018).

This Court should follow the Fifth and Sixth Circuits and hold that *Yearsley* immunity is an affirmative defense for three reasons. First, although the Seventh Circuit has never explicitly held that *Yearsley* immunity (or the government contract defense) is an affirmative defense, it has always treated it as such. *See Baker v. Atl. Richfield Co.*, 962 F.3d 937, 946-947 (7th Cir. 2020) (analyzing the government contract defense as an affirmative defense); *Ruppel v. CBS Corp.,* 701 F.3d 1176, 1185 (7th Cir. 2012) (same); *Tillett v. J.I. Case Co.*, 756 F.2d 591, 596–600 (7th Cir. 1985) (same); Second, immunity under *Yearsley* turns on facts. A contractor must show that it acted under valid federal authority and that it complied with the Government's instructions. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167-68 (2016). That inquiry depends on what the Government actually directed the contractor to do and whether the contractor actually followed those directions. Unlike true sovereign immunity—where "you can't sue us, we are the Government" is self-evident from the case caption—"you can't sue us, we were doing what the Government told us" cannot be resolved on the pleadings. That is why even the Supreme Court

4

has placed "derivative sovereign immunity" in quotation marks. *Id.* at 156. Only the sovereign possesses sovereign immunity. Third, the Supreme Court has expressly analogized *Yearsley*-type protection to qualified immunity. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166–69 (2016). Qualified immunity is universally treated as an affirmative defense: the defendant must invoke it, plead it, and carry the burden to establish it. The plaintiff has no obligation to anticipate it in the complaint. Because Campbell characterizes *Yearsley* immunity as a qualified-immunity-like protection—lost whenever the contractor violates federal law or disregards government instructions—the same procedural rule should apply here.

4. **Wilson's complaint cannot be dismissed based on a prospective affirmative defense.**

Dismissing Wilson's Complaint based on Defendants' government-contract defense or so-called "derivative sovereign immunity" would be improper because Plaintiff was not required to plead around Defendants' prospective defenses. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain any information about defenses and may not be dismissed for that omission.").

Notwithstanding, Plaintiff plausibly alleges that, notwithstanding Defendant's contractual relationship with the Social Security Administration, Defendant is liable under the TCPA for making unsolicited, telephone solicitations to Plaintiff and other consumers because the calls were made without Social Security Administration's authorization and otherwise outside the scope of Disability Services' relationship with the intent to funnel consumers and revenue to Disability Services. ECF 1 ¶24. In connection with Defendants' argument that, based only on the pleadings, the Court can conclude that Defendants are immune from TCPA liability (i.e., resolve

the merits of an affirmative defense), Defendants misstate the scope of the government-contract defense. Consistent with *Campbell-Ewald*, an agent will not be deemed to have acted within the scope of his or her agency where the agent does not adhere to instructions from the federal government. 577 U.S. 153, 166-169**.** Not all companies with government contracts are acting within the scope of their relationship with the government. Here, although Plaintiff was not required to address Defendants' immunity defense in the Complaint in any manner to state a TCPA claim, Plaintiff expressly alleges that "the purpose of the subject calls was to advertise and market Defendant's business or services." ECF 1 ¶24. Although Plaintiff acknowledges the existence of a contract between Disability Services and the Social Security Administration, Plaintiff alleges that Disability Services is making telemarketing calls. *Id.* The government is not instructing Defendant to engage in telemarketing. Any such calls would be outside of the scope of Disability Service's agency relationship with the government. These allegations are plausible: simply because a company has been authorized to act on the government's behalf does not mean that the company has been authorized to place telemarketing calls. At this stage of the proceedings, it would be inappropriate to dismiss Plaintiff's TCPA claim based on Defendants' immunity defense. *See Xechem,* 372 F.3d at 901 (7th Cir. 2004) ("Complaints need not contain any information about defenses and may not be dismissed for that omission."). And even if Plaintiff were required to plead around Defendants' immunity defense, Plaintiff is not required to know or allege more than he has about the inner workings of the contract between Disability Services and the Social Security Administration. *See Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009): "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'")**.**

### 5. Whether Disability Services acted as the government's agent cannot be resolved on the pleadings.

Courts in this Circuit have already recognized that the question whether a contractor acted as the Government's agent is fact-intensive and cannot be resolved on a Rule 12 motion. In *Mairs v. Allsup*, the Southern District of Illinois explained that, even when a contractor invokes the FCC's 2016 ruling on federal-contractor immunity, "the questions of whether Allsup is the SSA's agent and, therefore, exempt along with liability are fact-based ones, which are outside the four corners of the complaint." 2020 U.S. Dist. LEXIS 92077, at *4–5 (S.D. Ill. May 27, 2020). Because "agency is a question of fact," the court held that such issues "are not properly decided at this stage of the litigation" and must instead be explored through discovery. Id. (citing *Taylor, Bean & Whitaker Mortg. Corp. v. Cebulak*, 2004 WL 2106605, at *12 (N.D. Ill. Sept. 20, 2004)).

The Central District of Illinois reached the same conclusion in *Gilleland v. Express Scripts, Inc.*, where the contractor claimed immunity under *Campbell-Ewald* and Yearsley because it was supposedly carrying out mandatory tasks under its Department of Defense contract. 2025 U.S. Dist. LEXIS 193537, at *10–11 (C.D. Ill. Sept. 30, 2025). The court rejected that argument because Express Scripts "has not shown its contract with the DoD requires it" to call the non-beneficiary plaintiff, and therefore could not claim it was "simply perform[ing] as directed by the Government." Id. (quoting *Campbell-Ewald*, 577 U.S. at 167). Whether the contractor had actual federal authority and whether it acted within the scope of that authority were factual questions that remained in dispute.

The same is true here. Whether Disability Services acted as the Government's agent turns on what federal authority Disability Services actually received, what instructions the Government

7

actually gave, and whether Disability Services actually followed those instructions. None of that appears on the face of Chet Wilson's complaint. Those facts lie exclusively in Disability Services' possession. They cannot be assumed, and they cannot be resolved on the pleadings.

6. Wilson has plausibly alleged that he received telephone solicitations.

Disability Services leans on *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025), to argue its voicemails are not "telephone solicitations." That reads *Hulce* too broadly and ignores both the complaint and the posture. First, *Hulce* was expressly limited to its "unique set of facts." 132 F.4th at 501. The court stressed Foodsmart "could not have intended to encourage [the plaintiff] to pay for anything" because the purchasing decision had already been made. *Id.* at 500. None of that is alleged here. Second, even under *Hulce's* gloss, Wilson plausibly alleges "telephone solicitations." *Hulce* describes a solicitation as a call made "for the purpose of persuading or urging someone to pay for a service," and holds that the intended target is "the person who makes the purchasing decision." Id. at 499–500. Disability Services twice left nearly identical voicemails "to follow up on your interest for applying for disability benefits with us" and told Wilson to call back "so we can speak further about it." Compl. ¶¶ 20–21. Wilson alleges "the purpose of the subject calls was to advertise and market Defendant's business or services." Id. ¶ 24. At this stage, those allegations must be accepted as true and all reasonable inferences drawn in Wilson's favor.

This is how courts in this district treat DNC claims. In *Moore v. Healthcare Solutions Inc.*, the court refused to to dismiss a DNC claim at the pleading stage noting "maybe [the defendant] can show . . . the call wasn't a telephone solicitation, but that's a question for another day." *Moore v. Healthcare Sols. Inc.*, No. 21-cv-4919, 2022 U.S. Dist. LEXIS 220437, at *11 (N.D. Ill. Dec. 7, 2022) (cleaned up). *Jelinek v. Kroger Co.* likewise denied dismissal where the

8

plaintiff alleged calls encouraging the purchase of services, stressing that whether communication is a solicitation is a fact question. 2013 U.S. Dist. LEXIS 53389, at *4–5 (N.D. Ill. Apr. 10, 2013). And *Spiegel v. Reynolds* underscores that whether a call is a telephone solicitation cannot be resolved at the pleading stage because whether it is depends on evidence. 2016 U.S. Dist. LEXIS 161642, at *19–26 (N.D. Ill. Nov. 22, 2016).Under those settled principles, *Hulce* does not defeat Wilson's claim. It simply confirms that whether Disability Services' voicemails were made to encourage a purchase is a factual question inappropriate for resolution on the pleadings.

Finally the solicitation inquiry and the government contract defense in *Yearsley* inquiry are interdependent. If Disability Services was calling Wilson to sell its own commercial services, then it was not acting under a government contract or carrying out federal instructions. The government does not contract with private vendors to engage in commercial telemarketing to recruit paying customers. So if the voicemails qualify as "telephone solicitations" under the TCPA—and Wilson plausibly alleges they do—then Disability Services cannot invoke *Yearsley*. The government-contract defense depends on whether the challenged conduct was authorized, directed, and performed on the government's behalf. Telemarketing to obtain new business is not that.

## CONCLUSION

Disability Services' motion asks this Court to resolve fact-intensive merits issues at the pleading stage, contrary to Rule 12 and settled Seventh Circuit precedent. Wilson alleges a straightforward violation of the TCPA's do-not-call provisions: Disability Services twice called his registered DNC number and left voicemails encouraging the use of Disability Services' assistance services. On a motion to dismiss, those allegations must be accepted as true.

Disability Services' asserted *Yearsley* immunity cannot support dismissal under Rule

12(b)(1) or Rule 12(b)(6). Whether Disability Services acted under valid federal authority and complied with government instructions is a factual inquiry that cannot be resolved on the pleadings. And because Wilson plausibly alleges that the calls were made to market Disability Services' own commercial services, the complaint necessarily alleges conduct outside the scope of any federal instruction—foreclosing Yearsley at the threshold.

Nor can Disability Services escape liability based on the FCC's 2016 contractor ruling. The ruling applies only to § 227(b), not § 227(c), and in all events is no longer binding following *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025). The statute's plain text controls, and it applies to "persons"—including corporations such as Disability Services.

Finally, whether the two voicemails are "telephone solicitations" is a classic fact question inappropriate for resolution at this stage. Courts in this district routinely deny dismissal in DNC cases for exactly that reason, and nothing about *Hulce* changes that conclusion, which itself was decided at summary judgment. Under Rule 12(b)(6), the Court must credit Wilson's allegation that the calls sought to market Disability Services' services, and the complaint easily meets Twombly/Iqbal's plausibility standard.

For these reasons, Disability Services' motion should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED this November 17, 2025.

 /s/ *Anthony I. Paronich*
Anthony I. Paronich, *Subject to Pro Hac Vice*
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
Email: anthony@paronichlaw.com

*Attorney for Plaintiff*